**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 08-22655-CIV-ZLOCH/ROSENBAUM

JORGE LORENZO CUETO,

      Petitioner,

v.

WALTER A. McNEIL,

      Respondent.

_____/

**REPORT AND RECOMMENDATION**

This matter is before the Court upon Petitioner Jorge Lorenzo Cueto's Petition Under 28 U.S.C. § 2254 for Writ of *Habeas Corpus* by a Person in State Custody [D.E. 1, 4] and Petitioner's Motion to Amend his Petition and Motion to Stay Proceedings, or Alternatively to Place Case on Inactive Status [D.E. 19, 24]. The Honorable William J. Zloch referred the case to me for appropriate disposition or report and recommendation of all matters in the case. [D.E. 2, 11]. I have carefully considered the Petition, all filings in support thereof and in opposition thereto, Petitioner's Motions to Amend and Stay, all filings in support thereof and in opposition thereto, and the entire record, and am otherwise duly informed in the premises. Based on my review, I recommend that Petitioner's Motion to Amend be stayed, his Motion to Stay be granted, and his Petition for Writ of *Habeas Corpus* by a Person in State Custody be stayed until further Order of this Court.

## *I. Background*

### A. Underlying Case

      In his underlying state case in the Eleventh Judicial Circuit Court in and for Dade County, Florida, Petitioner was charged by information with grand theft auto of a motor vehicle from the

Angel Buick dealership, attempted robbery at the Bahama Fish Market, burglary with an assault or battery while armed at the Comfort Inn Suites, two counts of robbery at the Comfort Inn Suites, battery on a law enforcement officer, and resisting arrest with violence.  D.E. 39 at 4-16.  The charges stem from an alleged crime spree that occurred on the night of October 5, 1999.  During this whirlwind of criminal activity, Petitioner allegedly stole a Corvette from a car dealership, used it to go to the Bahama Fish Market, which he robbed at gunpoint before taking the car to a Comfort Suites Inn, which he then robbed at gunpoint, returning once again to the Corvette, which then took law enforcement officers on a chase before crashing at Florida International University, where Petitioner and his co-defendant, Julio Ruiz, ran from the car and attempted to flee on foot.

Petitioner was tried with co-defendant Ruiz, who was alleged to have driven the Corvette at issue.  The court tried the case with a separate jury for each defendant after the trial court denied Petitioner's motion for severance.  *See* D.E. 38, Trial Transcript ("Tr."), at 31-156, 166-244, 248-326, 404-684, 703-761.

At the conclusion of the trial, the jury returned a guilty verdict with regard to charges of grand theft auto (Count One), petit theft as lesser charged offense (Count Two), burglary without an assault or battery, while armed with a firearm (Count Three), two counts of robbery with a firearm (Counts Four and Five), battery of a law enforcement officer (Count Nine), and resisting an officer with violence (Count Ten).  D.E. 39 at 18-36; D.E. 38 at 1693-1700  On December 4, 2001, the trial court entered judgment and sentenced Petitioner to ten years' imprisonment on Counts One, Nine, and Ten, 60 days' imprisonment on Count One, and life imprisonment on Counts Three, Four, and Five, with the sentences of each to run concurrently with each other.  D.E. 39 at 18-36.  Petitioner's sentencing documents were filed on February 4, 2002, and recorded on February 20, 2002.  *Id.*

2

## B.  Petitioner's Direct Appeal

Petitioner filed his direct appeal of his convictions on February 15, 2002, to the Third District Court of Appeal of the State of Florida.  D.E. 36 at 28-54; D.E. 1 at 3.  As a basis for his appeal, Petitioner raised the following grounds: (a) the information was defective by not specifying the car alleged to have been stolen, and the verdict was insufficient for failing to identify the car stolen; (b) the evidence presented was insufficient to prove, beyond a reasonable doubt, the crime of petit theft; (c) the evidence presented was insufficient to prove, beyond a reasonable doubt, the crime of burglary; (d) the trial court committed fundamental error in its burglary instruction by including the "remaining in" portion of the standard instructions; (e) the case *Apprendi v. New Jersey*, 530 U.S. 466 (2000), is controlling on Petitioner's conviction of burglary, and his conviction should not be upheld under that case; (f) the evidence presented was insufficient to prove, beyond a reasonable doubt, the crime of armed robbery of Luca Spilimbergo; and (g) the prosecutor's comments during closing argument constituted fundamental error and denied Petitioner the right to a fair trial.  *Id.*  On March 5, 2003, the Third District Court of Appeal *per curiam* affirmed the judgment and conviction. *See Cueto v. State*, 840 So. 2d 246 (Fla. 3d DCA 2003).  The appellate court issued its Mandate on March 21, 2003.  D.E.  35-1 at 2.

## C.  Petitioner's State Court Motion for Post-Conviction Relief

On March 19, 2004, Petitioner filed a motion for post-conviction relief under Rule 3.850, Fla. R. Crim. P., in the Eleventh Judicial Circuit Court in and for Dade County, Florida.  D.E. 35-1 at 5-39.  In his post-conviction motion, Petitioner claimed that his judgment and sentence were unlawful because he had received ineffective assistance of counsel during trial.  Specifically, Petitioner argued that his counsel was ineffective in the following ways: (1) by failing to object to the testimony of Officer St. Germain about a statement of co-defendant Ruiz that allegedly violated Petitioner's Sixth

3

and Fourteenth Amendment rights to confront the witness against him, and then failing to ask the trial court to instruct the jury that this statement of Ruiz could not be used against Petitioner; (2) by deliberately eliciting from the prosecution's witness, Gilbert Senra, highly prejudicial evidence of "other crimes" committed by Petitioner and by arguing that Petitioner was guilty of uncharged crimes; (3) by failing to object to prosecutorial misconduct during the closing argument; (4) by failing to cross-examine Lorena Cipriani, prosecutorial witness, about material information; (5) by failing to object contemporaneously to sleeping jurors or to ask the trial judge to inquire as to the jurors' state of awareness; (6) by failing to preserve for appellate review the argument that the evidence was insufficient to support his conviction for burglary of the Comfort Suites Inn because the hotel was open to the public; (7) by failing to object to the jury instruction on the burglary charge and to preserve the issue for appellate review; (8) by failing to request that the jury be instructed to make a finding regarding who owned the Comfort Suites Inn, who failed to consent to Petitioner's entering or remaining in that hotel and whether he unlawfully entered or remained at that hotel; (9) by failing to object to Petitioner's conviction on petit theft on the basis that insufficient evidence existed to sustain the conviction; (10) by failing to move for a judgment of acquittal on Count Five and to preserve for appellate review the argument that the evidence was insufficient to support his Count Five robbery conviction.   As a result, Petitioner contended, the cumulative effect of Petitioner's trial attorney's errors and omissions prejudiced Petitioner and deprived him of his Sixth Amendment right to effective counsel. *Id.*  In July, 2004,[1] Petitioner filed a supplement to his Rule

---

[1]Petitioner averred that he filed his supplement to the Rule 3.850 Motion in July, 2003. *See* D.E. 35-2 at 37-38.  Because he filed his original Motion in March, 2004, and further, because the court denied the Motion in its entirety in April, 2005, however, the Court construes the reference to July, 2003, to constitute a scrivener's error.  Instead, the Court understands Petitioner to mean July, 2004.

3.850 motion, alleging that his counsel's ineffective assistance violated Petitioner's Sixth and Fourteenth Amendment rights.  D.E. 35-2 at 37-38.

On April 8, 2005, without an evidentiary hearing, the trial court issued an Order Denying Petitioner's Motion for Post-Conviction Relief.  D.E. 35-2 at 17.  Petitioner timely appealed the trial court's order denying  his Rule 3.850 motion, to Florida's Third District Court of Appeal.  *See* D.E. 35-3 at 16.  On June 14, 2006, the Third District Court of Appeal issued an opinion denying most of the relief that Petitioner sought.  *See Cueto v. State*, 937 So. 2d 144 (Fla. 3d DCA 2006).  The Third District did, however, reverse the denial of Petitioner's post-conviction motion and remand Petitioner's case to the trial court with regard to one issue.  *Cueto v. State*, 937 So. 2d 144 (Fla. 3d DCA 2006).  In this regard, the Third District's decision specifically directed the trial court either to conduct an evidentiary hearing on the issue of Petitioner's attorney's failure to request a judgment of acquittal on the burglary count or to attach those portions of the record conclusively refuting Petitioner's claim.  *Id.*

On September 20, 2006, Petitioner filed with the Third District Court of Appeal a Motion for Rehearing and Amended Motion for Rehearing regarding those portions of the Third District's order finding Petitioner's claims to be without merit.  *See* D.E. 35-3 at 16.  The State, in turn, sought discretionary review from the Supreme Court of that part of the Third District's decision remanding the case, and Petitioner likewise then requested review of the Third District's opinion to the extent that it found Petitioner's remaining claims to be without merit.  On February 27, 2007, the Florida Supreme Court denied both petitions for *certiorari*.  *Cueto v. State*, 952 So. 2d 1189 (Fla. 2007); *State v. Cueto*, 952 So. 2d 1191 (Fla. 2007).

On remand, the trial court entered an order dated July 17, 2007, summarily denying Petitioner's motion for post-conviction relief.  This order indicates that it was furnished to Petitioner

via United States mail on July 18, 2007.  D.E. 35-3 at 18-19.  Petitioner appealed from this order to

the Third District Court of Appeal on June 5, 2007.[2]  On April 9, 2008, the Third District Court of

Appeal issued an opinion affirming the Circuit Court's order denying the Petitioner's motion for

post-conviction relief.  *Cueto v. State*, 979 So. 2d 1113 (Fla. 3d DCA 2008).  Subsequently,

Petitioner filed for discretionary review of the Third District Court of Appeal's decision by the

Florida Supreme Court.  On July 11, 2008, the Florida Supreme Court denied discretionary review.

*Cueto v. State*, 988 So. 2d 621 (Fla. 2008).

**D.  The Original Federal *Habeas Corpus* Petition**

Plaintiff filed his original federal *habeas corpus* Petition before the Court in this Report and

Recommendation on September 24, 2008, raising three claims based on allegedly ineffective

representation by his trial counsel and requesting an evidentiary hearing.  D.E. 1, 4.  More

specifically, Petitioner claimed the following violations in his original federal *habeas corpus*

Petition:

> Petitioner was denied his constitutional right to effective assistance
> of counsel under the federal [C]onstitution by his counsel's deficient
> trial performance because trial counsel failed to object to the
> testimony of a police officer about a statement of co-defendant Ruiz
> that violated Petitioner's Six[th] and Fourteenth [A]mendment rights
> to confront the witnesses against him and deliberately elicited "other
> crimes" evidence and argued that Petitioner was guilty of "other
> crimes."

D.E. 1 at 5.

Respondent filed his Response to the Petition on May 12, 2009.  *See* D.E. 16.  In his

---

[2]  The Court notes that procedurally this appears odd. However, the State's brief in
response to Petitioner's appeal in this instance, dated January 30, 2008, represented that
Petitioner, in fact, filed his Notice of Appeal before the trial court issued its order on July 18,
2007.  *See* D.E. 35-3 at 50 n. 1.

Response, Respondent acknowledged that Petitioner had exhausted in state court the claims that he brings in this case but argued that none of Petitioner's claims have merit. *Id.* Petitioner filed his Reply on June 5, 2009. *See* D.E. 18.

### E.  The Proposed Amended *Habeas* Petition

On July 10, 2009, Petitioner filed his Motion to Amend and to Stay Proceedings, Or Alternatively, To Place Case on Inactive Status. *See* D.E. 19.  In this Motion, Petitioner asked for a stay of his federal *habeas* petition because he is "presently litigating in [s]tate [c]ourt[] a [m]otion for [p]ost-[c]onviction [r]elief, pursuant to Rule 3.850 of the Florida Rules of [C]riminal Procedure, raising various claims of newly discovered evidence, not contained in his Petition to the Court. [Further,] [i]n the event that such relief is denied in State court, he would supplement his Petition filed in this [C]ourt with those new grounds." *Id.*  Petitioner filed this Motion *pro se*, even though he was represented by counsel.  Because the Local Rules do not allow a represented litigant to file documents *pro se*, *See* L.R. 11.1.D.4, S.D. Fla., the Court issued an Order to Show Cause why Petitioner's Motion [D.E. 19] should not be stricken from the record.  *See* D.E. 22.  On August 27, 2009, Petitioner's counsel confirmed that she still represented Petitioner before this Court and adopted Petitioner's Motion.  *See* D.E. 24.  In the meantime, on July 27, 2009, Respondent filed a Response to Petitioner's Motion to Stay.  *See* D.E. 21.  At this time, Respondent took no position with regard to the merits of Petitioner's new claims and did not oppose either a stay or dismissal without prejudice of Petitioner's *habeas* Petition.  *Id.*  Instead, Respondent noted that *Rhines v. Weber*, 544 U.S. 269 (2005), governs whether a court should grant a motion to stay in a situation such as the one before the Court.  *Id.*

According to Petitioner's August 27, 2009, filing, after he filed his *habeas corpus* Petition, he became aware for the first time of an additional claim involving newly discovered evidence and

filed a *pro se* motion for post-conviction relief in state court. *Id.* Petitioner indicated that an amendment to his *habeas* Petition would be appropriate because knowledge of his new claim became available only after he had filed his Petition. *Id.* Explaining that his new claim has not been exhausted in state court, Petitioner argued that under the standard set forth in *Rhines v. Weber*, 544 U.S. 269 (2005), he has good cause for not exhausting his new claim earlier since he did not know about the newly discovered evidence before his petition was filed, and he has not engaged in any intentionally dilatory litigation tactics. *Id.* According to Petitioner, the Court should grant a stay of his Petition and hold it in abeyance while he exhausts his newly discovered evidence claim in state court. *Id.*

On August 28, 2009, the Court requested that Petitioner explain the basis for his requested stay and identify the "newly discovered evidence" in light of the standard in *Rhines.* D.E. 25. Additionally, the Court directed Respondent to respond to whatever explanation Petitioner might provide. D.E. 25. On September 3, 2009, Petitioner filed his Response to the Court's August 28, 2009, Order, where he identified the "new evidence" that is the subject of his pending motion for post-conviction relief as information that Gilbert Senra, "the 'jailhouse' snitch who testified at the Petitioner's trial that the Petitioner confessed to committing the crimes that are the subject of this case, had a secret oral agreement with the prosecutor that his sentence would be reduced in return for his testimony against Petitioner and lied when he testified that the Petitioner confessed to him," pursuant to information Petitioner received from fellow inmate Angel Medina. D.E. 26.

Petitioner attached a copy of his pending state post-conviction motion regarding the newly discovered evidence, that was unsigned and undated, to Petitioner's Response to the Court's August 28, 2009, Order, and incorporated the contents of the state motion into his Response. D.E. 26, D.E. 26-2. According to the post-conviction motion, Petitioner's new evidence consists of information

8

from a fellow inmate, Angel Medina, who contends that Senra falsified his testimony at Petitioner's trial and had a secret deal with the prosecuting attorney for the State, Laura Uriarte, to reduce Senra's sentence in exchange for his testimony at Petitioner's trial, and that the State did not disclose this deal to the defense during trial.  D.E. 26, D.E. 26-2.  Petitioner, who claims to have learned of this new information for the first time in July, 2008, when he was transferred to the facility where Medina was being held, argues that the new evidence supports findings that Petitioner's constitutional rights were violated under the Sixth and Fourteenth Amendments in that Senra's alleged perjured testimony deprived Petitioner of his right to a fair and impartial trial and provided evidence of the following prosecutorial misconduct: (1) the State's allegedly deliberate and knowing misrepresentation during trial that Senra was not given a reduced sentence for his testimony; (2) the State's allegedly knowing presentation of false testimony by Senra; and (3) the State's allegedly deliberate withholding of defense information about Senra's reduction in sentencing in exchange for his testimony.  D.E. 26-2.  In addition, Petitioner contends that the newly discovered evidence indicates that Senra, as a government agent who conspired with the State to obtain information from Petitioner, deliberately elicited statements from Petitioner that interfered with his right to counsel. *Id.*

Petitioner also attached a document called "Win at All Costs!," prepared by Medina and filed in Medina's own case on December 7, 2004, and an affidavit signed by Medina dated November 24, 2008.  D.E. 26-2.  Among other assertions in the affidavit, Medina alleges that Senra presented false testimony at Petitioner's trial and had an agreement with the State to testify against Petitioner in exchange for a reduced sentence.  D.E. 26-2 at 16-29.  Additionally, Petitioner attached a motion for mitigation of sentence that Senra filed on December 6, 2006, in Senra's case.  D.E. 26-3 at 36-39.  In this motion, Senra requests that the court reduce his sentence in consideration of assistance that

Senra has rendered to the State Attorney's Office in the past, as well as cooperation as a confidential informant that Senra pledges to provide to the State Attorney's Office upon his release from custody. *Id.* Although the motion names specific criminal cases where Senra claims to have provided assistance, including in Medina's case, the motion does not identify Petitioner's case. *See id.*

On September 14, 2009, Respondent filed a Response to Petitioner's September 3, 2009, filing, arguing that Petitioner's Motion did not meet the standard set forth in *Rhines*, and, thus, the Court should deny Petitioner's Motion to Stay. D.E. 27. In this regard, Respondent urges that even assuming that the claims constitute newly discovered evidence that may provide "good cause" for failure to exhaust claims in state court and, further, that no indications of "dilatory litigation tactics" exist, the unexhausted claims are not potentially meritorious. *Id.* According to Respondent, even if Senra's testimony were false, it would have had no impact upon the conviction of Petitioner in light of all of the evidence in the case. *Id.* As such, Respondent concludes that granting a stay would be an abuse of discretion. *Id.* Instead, Respondent suggests, the subject Petition should be dismissed without prejudice, as the Petition was timely filed and Petitioner has sufficient time to return to this Court within the limitations period immediately after the state court remedies have been fully exhausted. *Id.*

Respondent filed the exhibits to its Response to the Petition and the trial transcript on September 30, 2009, October 14, 2009, and February 8, 2010. D.E. 31, 38, 39. Petitioner also filed part of the documents from the underlying state court case on October 1, 2009. D.E. 35.

Subsequently, the Court asked Petitioner for additional information regarding his Motion to Stay Proceedings. On March 5, 2010, Petitioner clarified that he filed his state court motion on May 7, 2009, seeking post-conviction relief based on the information he obtained from Medina. D.E. 41. According to Petitioner's counsel, the second post-conviction motion in state court is not yet fully

briefed before the state court, although the presiding judge has indicated her intention to set the matter for an evidentiary hearing following the anticipated conclusion of briefing on April 19, 2010. *Id.*  This Court now considers Petitioner's original *Habeas* petition and his Motions to Amend and Stay.

## *II. Analysis*

### A. Threshold Issues

As threshold issues, the Court first must determine whether a § 2254 *habeas corpus* petition has been timely filed and whether all claims have been exhausted before reaching the merits of Petitioner's Petition.  In this case, Petitioner has also filed a Motion to Stay and a Motion to Amend, which may affect these threshold issues.

**1.      The Original Petition**

*a.  Timeliness*

The Court begins with the general standard for timeliness.  The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposed a one-year statute of limitations on petitions for writ of *habeas corpus* filed by state prisoners.  *See* Antiterrorism and Effective Death Penalty Act, Pub. L. 104-132, 110 State. 1214 (1996).  As relevant to this case, the statute of limitations starts running upon the latest of "(A) the date on which the judgment became final by the conclusion of direct review . . . or (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." *Id.* § 2244(d)(1)(A), (D).[3]   Under either

_____

[3]  The language of section (d), generally, reads,

> (1)      A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—

trigger date, the limitations period is tolled during the time "a properly filed application for State post-conviction or other collateral review . . . is pending." *Id.* § 2244(d)(2). "[T]he filing of a federal habeas petition does not toll the limitations period." *Rhines*, 544 U.S. at 274-75. After the trigger date has expired, a petitioner cannot resurrect the statute of limitations period by properly filing for post-conviction relief. *Melson v. Allen*, 548 F.3d 993, 99 (11th Cir. 2008) ("once [petitioner's] limitations period ended . . . any collateral application filed after that date had no tolling effect.") (citing *Alexander v. Sec'y, Dep't of Corr.*, 523 F. 3d 1291, 1294 (11th Cir. 2008));

---

    (A)    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

    (B)    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

    (C)    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

    (D)    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

  (2)    The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

*Sibley v. Culliver*, 377 F.3d 1196, 1204 (11ᵗʰ Cir. 2004) (citing *Moore v. Crosby*, 321 F.3d 1377, 1381 (11ᵗʰ Cir. 2003)).[4]

   With regard to Petitioner's original Petition under Section 2244(d)(1)(A), Petitioner's AEDPA clock began to run when Petitioner's conviction became "final," 90 days after the appellate court issued its mandate on March 21, 2003. *See Bond v. Moore,* 309 F.3d 770, 773-74 (11th Cir.2002) (explaining that a judgment becomes "final" on the date on which the U.S. Supreme Court issues a decision on the merits of petitioner's direct appeal or denies *certiorari*, or after the expiration of the 90 days in which petitioner could file such a petition). Thus, AEDPA's one-year statute of limitations petition began to run on June 18, 2003 (ninety days after March 21, 2003), when Petitioner's conviction became final. *See* 28 U.S.C. § 2244(d)(1)(A).

   After 274 days had passed, on March 19, 2004, Petitioner timely filed his motion for post-conviction relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure in Circuit Court of the Eleventh Judicial Circuit in and for Dade County, Florida. D.E. 35-1 at 5-39.[5] When Petitioner filed his Rule 3.850 motion on March 19, 2004, Petitioner's AEDPA clock stopped temporarily. 28 U.S.C. § 2244(d)(2); *See Hollinger v. Sec'y of Dept. of Corr.*, 334 Fed. App'x 302, 304 (11ᵗʰ Cir. 2009) (addressing Fla. R. Crim. P. 3.850 motion). Under the AEDPA, the one-year limitations period is tolled for "[t]he time during which a properly filed application for state post-

---

   [4] The Court notes that the one-year limitation period is also subject to equitable tolling in "rare and exceptional cases." *See Helton v. Sec'y for Dep't of Corr.*, 259 F.3d 1310, 1312 (11ᵗʰ Cir. 2001). Petitioner has not requested equitable tolling, and thus, the Court does not consider it in this Report.

   [5] Florida has a two-year limitation period for the filing of post-conviction relief pursuant to Rule 3.850(b), Fla. R. Crim. P. *See also Zeigler v. State*, 632 So.2d 48, 50 (Fla. 1993). Thus, when Petitioner filed his Rule 3.850 motion on March 19, 2004, he was well within the two-year limitation from the date of the mandate on June 18, 2003.

judgment or other collateral review with respect to the pertinent judgment or claim is pending." *Id.*

On April 8, 2005, the trial court entered an Order Denying Motion for Post-Conviction Relief, without evidentiary hearing, which was filed with the clerk of the court on April 21, 2005. D.E. 35-2 at 17.  The order reflects that the clerk of the court provided the order to Petitioner's counsel on April 25, 2005. *Id.*  A state post-conviction or collateral motion remains "pending," and thus, tolled, under § 2244(d)(2), for the time during which the petitioner could have appealed the denial of such motion, even if the petitioner did not file an appeal. *See Cramer v. Sec'y , Dept of Corr.*, 461 F.3d 1380, 1383 (11th Cir. 2006) (addressing Fla. R. Crim. P. 3.850 motion).  Petitioner had thirty days, or until May 25, 2005, to appeal this order pursuant to Rule 3.850(g), Fla. R. Crim. P.  Accordingly, as of May 25, 2005, Petitioner had 91 days left on his AEDPA clock.

After another 1 day had passed on his AEDPA clock, on May 27, 2005, Petitioner appealed the trial court's order denying his Rule 3.850 motion, to Florida's Third District Court of Appeal. *See* D.E. 35-3 at 16.  Once again, his AEDPA clock stopped – this time at 90 days.  On June 14, 2006, the Third District Court of Appeal issued an opinion reversing the denial of Petitioner's post-conviction motion with respect to one issue and remanding the matter to the trial court to either conduct an evidentiary hearing on the issue of Petitioner's attorney's failure to request a judgment of acquittal on the burglary count or to attach those portions of the record conclusively refuting Petitioner's claim. *Cueto v. State*, 937 So. 2d 144 (Fla. 3d DCA 2006).

On July 17, 2007, the trial court, on remand, denied Petitioner's motion for post-conviction relief.  This order indicates that it was furnished to Petitioner via mail on July 18, 2007.  Petitioner timely appealed from this order to the Third District Court of Appeal on June 5, 2007.  On April 9, 2008, the Third District Court of Appeal issued an opinion affirming the trial court's order denying the Petitioner's motion for post-conviction relief. *Cueto v. State*, 979 So. 2d 113 (Fla. 3d DCA

14

2008). Subsequently, Petitioner filed for discretionary review by the Florida Supreme Court. On July 11, 2008, the Florida Supreme Court denied discretionary review. *Cueto v. State*, 988 So.2d 621 (Fla. 2008). Petitioner then had ninety days before his AEDPA clock began again, on October 9, 2008.

On September 24, 2008, while Petitioner's AEDPA clock remained tolled at 90 days remaining, Petitioner filed the original federal *habeas* Petition before the Court in this Report. D.E. 1. Thus, the Court finds Petitioner's original Petition to have been timely filed under the AEDPA.

### b. Exhaustion

Next, the Court must determine whether Petitioner has exhausted his state remedies with respect to his original Petition. *See* 28 U.S.C. §2254(b), (c). This requirement to exhaust state remedies, which stems from concerns of comity and federalism, is intended to reduce piecemeal litigation, to protect the state courts' role in the enforcement of federal law, and to prevent disruption of state judicial proceedings. *Rose v. Lundy*, 455 U.S. 509, 514-18 (1982). This doctrine requires that all claims first be pursued in state courts through the appellate process. *Leonard v. Wainwright*, 601 F. 2d 807 (5th Cir. 1979).

Under exhaustion doctrine, proper exhaustion of a claim must be "serious and meaningful," requiring the petitioner to "'afford the State a full and fair opportunity to address and resolve the claim on the merits.'" *Kelley v. Sec'y for the Dept. of Corr.*, 377 F.3d 1317, 1343-44 (11th Cir. 2004) (quoting *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 10 (1992)). Merely proceeding through the state courts does not satisfy this requirement. *Id.* (citing *Picard v. Connor*, 404 U.S. 270, 275-76 (1971)). "[N]or is it sufficient that all the facts necessary to support the claim were before the state courts or that a somewhat similar state-law claim was made." *Id.* (citing *Anderson v. Harless*, 459 U.S. 4, 6 (1982)). Rather, the petitioner must present his claims to the state courts in such a way that the state

courts are given the "'opportunity to apply controlling legal principles to the facts bearing upon [the petitioner's] constitutional claim.'" *Id.* (citing *Picard*, 404 U.S. at 277). In other words, "[t]he ground relied upon must be presented face-up and squarely; the federal question must be plainly defined. Oblique references which hint that a theory may be lurking in the woodwork will not turn the trick." *Id.* at 1344. Instead, where a petitioner makes a claim under the federal Constitution, the petitioner "must articulate the constitutional theory." *Ziegler v. Crosby*, 345 F.3d 1300, 1307 (11th Cir. 2003). Moreover, to ensure exhaustion, the petitioner must "present [his] claims in this manner of clarity throughout 'one complete round of the State's established appellate review process.'" *Kelley*, 377 F.3d at 1344 (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)).

Applying these principles to Petitioner's original petition, the Court finds that Petitioner fully exhausted in state court all of his claims set forth in the original petition. Petitioner's March 19, 2004, post-conviction state motion reflects that Petitioner properly raised at that time the same claims Petitioner relies on in his original Petition in the instant matter. D.E. 35-1 at 5-75. Moreover, Respondent does not dispute that these claims were exhausted. D.E. 16. Accordingly, Petitioner has met the exhaustion requirement for these claims.

**2.    The Proposed New Claims**

*a.  Timeliness*

A *habeas* petition "may be amended or supplemented as provided in the rules of procedure applicable to civil actions." 28 U.S.C. § 2244(d)(1). Section 2244(d)(1) imposes the same one-year limitation period for making an original *habeas* petition to make an amendment to a *habeas* petition. As the Supreme Court in *Rhines* stated, "[T]he filing of a petition for habeas corpus in federal court does not toll the statute of limitations." *Rhines v. Weber*, 544 U.S. 269, 274-75 (2005). Therefore, Petitioner's AEDPA time-clock continued even after the filing of his federal *habeas* petition.

16

Consequently, as of September 24, 2008, Petitioner had 90 days left on his Section 2244(d)(1)(A) AEDPA clock, which started again as of October 9, 2008. 28 U.S.C. § 2244(d)(1)(A).  Thus, Petitioner's AEDPA clock expired on January 7, 2009.  Petitioner, however, did not file his most recent state court motion for post-conviction relief until May 7, 2009, four months after his Section 2244(d)(1)(A) AEDPA clock had run out.  *See* D.E. 41.  Thus, Petitioner cannot supplement his Petition before this Court with the claims contained in his second state post-conviction motion under 28 U.S.C. § 2244(d)(1)(A).

The Court, therefore, considers whether any other part of the AEDPA would allow Petitioner to file his new claims in this action.  In this regard, Petitioner asserts that his new claims are based on "newly discovered evidence."  Consequently, the Court must determine whether 28 U.S.C. § 2244(d)(1)(D), entitles Petitioner to a new *later* trigger date, that may allow for an amendment.  Under § 2244(d)(1)(D), the AEDPA limitations period begins running from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D).  Petitioner alleges that his new claims are based on "newly discovered" facts, available to him only after the filing of his original *habeas* Petition on September 24, 2008.  According to Petitioner, Petitioner did not know of the information underlying his new claim at the time of Petitioner's trial or appeal, as Medina did not contact Petitioner until some time in July, 2008, and only on November 24, 2008, did Medina sign the affidavit specifically alleging prosecutorial misconduct by the State and false testimony by Senra.  *See* D.E. 26-2 at 2, 27-29.

The limitations period under§ 2244(d)(1)(D) "begins when the factual predicate of a claim could have been discovered using due diligence, not when it was actually discovered."  *Melson v. Allen*, 548 F.3d 993, 999 (11th Cir. 2008) (citing *Schulter v. Varner*, 384 F.3d 69, 74 (3d Cir. 2004));

*see also Rowell v. McNeil*, 2009 WL 559528, * 3-4 (N.D. Fla. March 4, 2009).  As the Eleventh Circuit has held, a petitioner bears the burden of showing that "the factual predicate of the claim could not have been discovered previously through the exercise of due diligence." *Id.* (citing *In re Boshears*, 110 F.3d 1538, 1540 (11th Cir. 1997) (quoting 28 § 2244(d)(1)(D)).  "Due diligence means the petitioner 'must show some good reason why he or she was unable to discover the facts' at an earlier date." *Id.* (quoting *In re Boshears*, 110 F.3d at 1540).  Mere allegations that the petitioner "did not actually know the facts underlying his or her claim do[] not pass the test." *Id.* (quoting *In re Boshears*, 110 F.3d at 1540).  The correct inquiry is "whether a reasonable investigation . . . would have uncovered the facts the applicant alleges are 'newly discovered.'" *Id.* (quoting *In re Boshears*, 110 F.3d at 1540) (citation omitted)); *see also Wilson v. Beard*, 426 F.3d 653, 661-62 (3d Cir. 2005) (holding that whether a *habeas* petitioner exercised due diligence is context-specific and the essential question is "whether petitioner should be expected to take actions which would lead him to the information."). Indeed, a petitioner can only assert knowledge of a later accrual date "if vital facts could not have been known." *Schulter*, 384 F. 3d at 74.

 With these standards in mind, the Court looks at the basis of Petitioner's "newly discovered evidence claims." As discussed previously, Petitioner asserts that in July, 2008, when Petitioner was transferred to the same facility where Medina was being held, Medina informed him for the first time that Senra provided false testimony at trial in exchange for a reduced sentence and that the prosecutor knew that Senra's testimony was false, knowingly presented Senra's false testimony at trial, failed to provide information about the reduction in sentence to defense counsel during trial, and finally, that Senra, as a government agent who conspired with the State to obtain information from Petitioner, deliberately elicited statements from Petitioner that interfered with Petitioner's right to counsel. D.E. 26-3 at 1-14.

18

According to Petitioner, in July, 2008, when Petitioner was transferred to the facility that was housing Medina at the time, Medina informed Petitioner that he had overheard Senra admit that Senra had conspired with Assistant State Attorney Laura Uriarte and had provided false testimony regarding Petitioner at Petitioner's trial in exchange for a reduction in Senra's sentence. In support of Petitioner's allegations that Senra testified falsely, Medina provided a written statement filed on December 7, 2004, in Medina's own Florida state criminal appeal, titled "Win at All Costs!," and a separate signed affidavit dated November 24, 2008.

In "Win at All Costs!," Medina stated that at Petitioner's trial,

> [Assistant State Attorney ("ASA")] Uria[r]te tried and convicted . . . [Petitioner] [in an] armed robbery case in which she obtain[ed] a life sentence using the testimony of . . . Se[nr]a. . . . .[ASA] Uria[r]te portrayed Se[nr]a['s] . . . testimony to the jury under the pretense that . . . Se[nr]a [was not] getting any kind of sentence reduction for their cooperation with the State of Florida. The fact is that [ASA] Uria[r]te had a pre[-] arranged verbal agreement with Mr. Se[nr]a that his sentence would ultimately be reduced as part of his co-operation in these cases, therefore, presenting false testimony . . . . (Of course, this fact [was] deliberately and with malicious intent withheld from Mr. Cueto's defense attorney and from the jury that convicted him)."

D.E. 26-3 at 17-18, 21. As noted above, Medina publicly filed this document in his own appeal, before Florida's Third District Court of Appeal. *See id.* at 17-18.

Similarly, in his signed affidavit, Medina asserted that while incarcerated at the Turner Gilford Knight Detention Center in June of 2003, "[he] was placed in a cell which was between . . . . [another inmate] and Gilbert Se[nr]a. For over a month and a half[,] [he] continuously heard both of these individuals talk and conspire about cases that they had testified on, or were actively trying to get involved in, with the hopes of having their sentences reduced. Se[nr]a on various occasions expressed his concern about . . . [ASA] Uria[r]te not complying with her verbal promises of reducing his sentence for his testimony [regarding]. . . [Petitioner's] Armed Robbery case." D.E. 26-2 at 28-

19

29.  Medina further claimed that Senra's sentence was reduced in exchange for his false testimony against Petitioner.  *Id.*

Upon consideration of the facts represented by Petitioner in this case, the Court finds that "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence" did not occur until July, 2008.  Although Medina publicly filed his "Win at All Costs!" document in his own case on December 27, 2004, the record does not reveal that Petitioner knew Medina or knew of him until July, 2008.  Consequently, unless undertaking a "reasonable investigation" requires a petitioner to search the files of all other defendants in the state – a proposition that this Court finds to be unreasonable, the record provides no indication of how Petitioner could have been expected to find Medina's statement through due diligence in the absence of someone directing Petitioner's attention to Medina – an event that did not occur until July, 2008. Nor, if taken at face value for the purpose of determining the trigger date, do Petitioner's assertions that the prosecutor and Senra entered into a secret agreement bring to mind other ways for Petitioner to have learned of that alleged arrangement through due diligence other than through Medina in this instance.  Accordingly, I find that Petitioner has met his burden to establish that "vital facts could not have been known" earlier than July, 2008, thus allowing Petitioner to proceed under a later AEDPA trigger date of July, 2008, under § 2244(d)(1)(D), for purposes of raising the allegations contained in Petitioner's Motion to Stay.

Having found that Petitioner has met his burden to show his entitlement to proceed under Section 2244(d)(1)(D), next, the Court must consider whether, using the July, 2008, trigger date, Petitioner timely made his new *habeas* claim under the AEDPA.  Petitioner does not provide a specific date in July on which he claims to have learned from Medina of the information alleged in the Motion to Amend.  As the running of the statute of limitations is an affirmative defense not

20

raised by Respondent, Petitioner has not failed to meet any burden under the AEDPA, unless specifically burdened by the Court. *Day v. Crosby*, 391 F.3d 1192, 1193-94 (11th Cir 2004) (holding that the running of the statute of limitations under AEDPA is an affirmative defense, but should the district court deem it necessary, timeliness can be raised *sua sponte* and petitioner can be directed to show cause why petition should not be dismissed for untimeliness) (internal citation omitted); *see e.g., Griffin v. Rogers*, 308 F.3d 647, 652-53 (6th Cir. 2002) (holding that the party asserting statute of limitations as an affirmative defense has the burden of demonstrating that the statute has run in a habeas case). However, a specific date is unnecessary for the Court's analysis at this time, in light of Petitioner's representation that he became aware of the facts underlying his new claim in July, 2008, the same month he was released from solitary confinement. *See* D.E. 41 at 2. Even if Petitioner learned of the new information on July 1, 2008, the claim that Petitioner has raised for the first time in his Motion to Amend and to Stay appears to have been timely filed under the AEDPA.

As noted previously, Petitioner filed his second state post-conviction relief motion on May 7, 2009, 311 days after July 1, 2008, and within the one-year statutory period under Section 2244(d)(1)(D) of the AEDPA. This filing potentially tolls the running of the AEDPA clock. While that clock was potentially stopped at 311 days, on July 10, 2009, Petitioner filed his Motion to Amend seeking to add the claims raised in his second state post-conviction motion to his federal *habeas* petition. Accordingly, at this point, it appears that Petitioner may have timely filed his Motion to Amend.

Nevertheless, the Court notes that under Florida law, Rule 3.850 imposes a requirement that a petitioner file his motion for post-conviction relief within two years of when his judgment and sentence become final on June 18, 2003. Thus, on May 7, 2009, when Petitioner filed his second motion for post-conviction relief in state court, generally speaking, Petitioner would have fallen

outside the two-year statute of limitations period for filing his second Rule 3.850 post-conviction motion. R. 3.850, Fla. R. Crim. P. Under Florida law, however, successive post-conviction relief 3.850 motions may be filed after the expiration of the two-year time if the motion is based on newly discovered evidence, specifically, if it alleges that "the facts on which the claim is predicated were unknown to the movant or the movant's attorney and could not have been ascertained by the exercise of due diligence." R. 3.850(b), Fla. R. Crim. P.; *see Pope v. State*, 702 So. 2d 221, 223(Fla. 1997) (citing to *Porter v. State*, 653 So. 2d 374 (Fla. 1995)). While this language bears substantial similarity to the federal standard, the Florida state court has not yet ruled on whether Petitioner has satisfied the state standard. Such a determination is important, however, because if the state court finds that Petitioner's second post-conviction motion is untimely, the Eleventh Circuit will not consider Petitioner's AEDPA clock to have been tolled by the filing of his second post-conviction motion. *See Sweet v. Sec'y, Dep't of Corr.*, 467 F. 3d 1311, 1318 (11th Cir. 2006) (holding that where a state court holds "unambiguously" that a state post-conviction motion is untimely, it does not toll the one-year federal limitation period under AEDPA for a habeas petitioner); *see also Ousley v. Sec'y, Dep't of Corr.*, 269 Fed. App'x 884, 887 (11th Cir. 2008) (affirming holding in *Sweet*).

Thus, it is still possible that Petitioner's new claims, upon return to this Court, will not be found timely under the AEDPA.[6] Without resolution from the state courts regarding timeliness and

---

[6]If the state court finds Petitioner's new claim to have been filed untimely, he must demonstrate that his Motion to Amend was filed within the one-year AEDPA period provided by Section 2244(d)(1)(D) without relying on the May 7, 2009, filing of the second state post-conviction motion to have tolled the statutory period. Petitioner may be able to accomplish this task, but a possibility remains that he will not. As noted above, Petitioner has not established the precise date in July, 2008, upon which he learned of the new information. Because he filed his Motion to Amend and to Stay on July 10, 2009, if Petitioner learned of the information for the first time on July 10, 2008, or earlier, the one-year period for filing his *habeas* motion will have expired and Petitioner's Motion to Amend and to Stay would have been untimely filed. Therefore, should the state court find Petitioner's second post-conviction motion to be

specific information regarding the exact date on which Petitioner was released from solitary confinement, the Court cannot be certain at this time that Petitioner's Motion to Amend and to Stay was timely filed under the AEDPA.

### b. Appropriateness of a Stay and Abeyance

Assuming *arguendo*, solely for purposes of addressing Petitioner's pending Motion to Stay, that Petitioner's Motion to Amend was timely, if this Court grants Petitioner's Motion to Amend his petition, Petitioner's *habeas* petition would now include both exhausted and unexhausted claims. The Supreme Court has held that in such situations, a court has limited discretion to grant a stay of a *habeas* petition.  In *Rhines v. Weber*, 544 U.S. 269 (2005), the Supreme Court set forth the standard of when a district court may order a stay or abeyance of a *habeas corpus* petition where a § 2254 petition contains both exhausted and unexhausted claims, to allow the petitioner to exhaust the unexhausted claims.  A district court shall order such a stay or abeyance if (1) the petitioner had "good cause" for failing to exhaust the claims in state court; (2) the unexhausted claims are "potentially meritorious;" and (3) "there is no indication that the petitioner engaged in intentionally dilatory litigation tactics."  *Id.*; *see also Thompson v. Sec'y for Dep't of Corr.*, 425 F.3d 1364, 1365 (11th Cir. 2005) (vacating and remanding lower court decision that lacked an analysis of *Rhines* factors of whether a stay was warranted).

The Supreme Court indicated that "a stay and abeyance should be available only in limited circumstances" because it has the potential to frustrate the "AEDPA's objective of encouraging finality by allowing a petitioner to delay the resolution of the federal proceedings" and undermine the "AEDPA's goal of streamlining federal habeas proceedings by decreasing a petitioner's incentive

---

"unambiguously untimely," this Court will have to make a factual determination as to precisely when in July, 2008, Petitioner learned of the new information.

to exhaust all of his claims in state court prior to filing his federal petition." *Rhines*, 544 U.S. at 277. Furthermore, the Supreme Court cautioned that as "granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts, stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court." *Id.* at 277. Even where a petitioner demonstrates good cause, however, the Supreme Court has cautioned that "the district court would abuse its discretion if it were to grant [a petitioner] a stay when his unexhausted claims are plainly meritless." *Id.* "[I]f a petitioner engages in abusive litigation tactics or intentional delay, the district court should not grant him a stay at all." *Id.* Furthermore, the Supreme Court directed that any stay must be set with reasonable time limits. *Id.*

If a court determines that a stay and abeyance is not the appropriate avenue down which to proceed, a court can sever the unexhausted claims from the petition and proceed with the exhausted claims, or dismiss the entire petition as a mixed petition, keeping in mind not to unreasonably impair the petitioner's right to obtain federal relief. *Id.* at 277-278. Dismissal of a *habeas* petition is not appropriate when it "will likely mean the termination of any federal review" because it is unlikely that a petitioner can exhaust his state claims and return to federal court within the AEDPA one-year period. *Id.* at 275.

In *Granberry v. Greer,* 481 U.S. 129, 134-35 (1987), the Supreme Court held that the standard to be used to determine whether a federal court should address the merits of an unexhausted claim is whether it is clear that the petitioner has failed to state a colorable claim, or whether the interests of justice and federalism would better be served by requiring exhaustion. *Id.* (overruled in part by § 2254(b)(3)) (*see Payne v. Kemp*, 2010 WL 309853, *2-3 n.4 (S.D. Fla. Jan 25, 2010) (noting that § 2254(b)(3) overruled in part *Granberry* to the extent that the state no longer may be deemed to waive the exhaustion requirement, but the underlying policies cited in *Granberry* remain

24

good law and are incorporated into § 2254(b)(2)). Where a court decides to deny a stay and abeyance of a mixed petition, under *Rhines*, the court must provide the petitioner with the option to dismiss the unexhausted claims and proceed on the exhausted claims only, or dismiss the entire petition and refile after exhausting the unexhausted claims. *Rhines*, at 278.

Turning to Petitioner's *habeas* Petition, which for purposes of determining the pending Motion to Stay the Court will assume includes both exhausted and unexhausted claims, I find that Petitioner meets all of the elements for a stay and abeyance under *Rhines*. First, the Court agrees with Respondent that no indications of any "dilatory litigation tactics" by Petitioner exist in the pending matter or in the underlying state case.

Second, the Court considers whether Petitioner has shown good cause. As touched upon in the analysis of whether Petitioner's new claim is timely under Section 2244(d)(1)(D), I find that Petitioner's new discovery of the evidence that supports his unexhausted new claims establishes "good cause" for failure to exhaust these claims in state court at this point in time.

While the Supreme Court has not specifically stated what constitutes good cause,[7] some courts have analogized the *Rhines* "good cause" standard to the showing of "cause" required to overcome a procedural bar and found "cause" where an external objective factor not attributable to the petitioner caused the failure to exhaust his state remedies. *See, e.g., Whitley v. Ercole*, 509 F. Supp. 2d 410, 417-18 (S.D. N. Y. 2007) (collecting cases interpreting "good cause" standard) (citing *Johnson v. Sullivan*, 2006 WL 37037, *3 (C.D. Cal. Jan. 4, 2006) ("'Cause' usually means some objective factor external to the petitioner which gave rise to the default. In this case, [p]etitioner has

---

[7] The Supreme Court has only stated in dicta that a "petitioner's reasonable confusion about whether a state filing would be timely will ordinarily constitute 'good cause' for him to file in federal court." *Pace v. Diguglielmo*, 544 U.S. 408, 416 (2005).

failed to demonstrate an external factor, not attributable to him, which provides 'good cause' for the failure to exhaust his state remedies . . .Under the procedural default analogy, [p]etitioner's lack of legal knowledge is not 'cause' because it is not an objective factor external to petitioner which prevented compliance with the exhaustion requirement.") (citations omitted)); *Hernandez v. Sullivan,* 397 F. Supp. 2d 1205, 1206-07 (C.D. Cal. 2005) (finding no "good cause" by looking to the case law on "cause" for procedural default and determining that petitioner "has not shown that his failure to exhaust his claims resulted from any external objective factor that cannot fairly be attributed to him.") (other citations omitted)).

Other district courts have found that the "good cause" standard is a lesser showing than that for procedural bar and should require that a petitioner demonstrate that he "was prevented from raising the claim, either by his own ignorance or confusion about the law or the status of his case, or by circumstances over which he had little or no control." *Medina v. Woodford*, 2006 WL 2844578, *2-3 (N.D. Cal. Oct. 2, 2006) (quoting *Riner v. Crawford*, 415 F. Supp. 2d 1207, 1210 (D. Nev. 2006)); *see also Jackson v. Roe*, 425 F.3d 654, 661-62 (9th Cir. 2005) ("the application of an 'extraordinary circumstances' standard does not comport with the 'good cause' standard prescribed in *Rhines*.").

At the other end of the spectrum, some courts, including the Southern District of Florida, have found that the appropriate good cause standard requires a petitioner merely to show a legitimate reason warranting the delay in raising these unexhausted claims. *See Henry v. McDonough*, 2009 WL 762219, * 3- 6 (S.D. Fla. March 19, 2009) (denying stay, in part, where petitioner could not show legitimate reason, and thus, good cause, for failure to raise unexhausted claims during state appeal process); *see, e.g., Briscoe v. Scribner,* 2005 WL 3500499, *2 (E.D. Cal. Dec. 21, 2005) (granting stay under *Rhines*, in part, because petitioner showed good cause for failing to discover

new claims that he was denied his Sixth Amendment right to confront a witness, prior to time of his motion to stay, and finding petitioner demonstrated "prima facie case that a justifiable, legitimate reason exists which warrants the delay of federal proceedings while exhaustion occurs.").

Additionally, where a court finds that a petitioner discovers the factual predicate to new claims after completion of his state appeal process, this new discovery weighs in favor of a petitioner's having established "good cause" under *Rhines* for failure to exhaust the new claims in state court. *See, e.g., Leonardos v. Buddress*, 2007 WL 1174825, * 3 (N.D. Cal. Apr. 19, 2007) (granting stay and finding "good cause" under *Rhines,* in part, because petitioner's unexhausted claims were based on recently discovered evidence and "newly discovered evidence weighs in favor of finding good cause"); *Lugo v. Kirkland*, 2006 WL 449130, *4 (N.D. Cal. Feb. 22, 2006) (granting stay of petition under *Rhines*, in part where petitioner demonstrated "good cause" by showing that new claims were discovered after state appeal process concluded and petitioner had filed federal petition); *see also Beets v. McDaniel*, 2009 WL 212424, *5-6 (D. Nev. Jan 23, 2009) ("Given that a showing that the factual or legal basis for a claim was not reasonably available to counsel constitutes cause for the purpose of excusing a procedural default, . . . it stands to reason that it would also provide good cause under *Rhines*."); *Orange v. Tilton*, 2008 WL 734255, * 2 (S.D. Cal. March 18, 2008) (finding petitioner failed to show good cause under *Rhines* where he failed to "allege[] that the factual basis of this clam was newly discovered or could not have been discovered earlier through exercise of due diligence.").

Moreover, courts have also found relevant to the good cause analysis a petitioner's efforts underway to pursue the unexhausted claims in state court. *See, e.g.*, *Rey v. New Jersey*, 2007 WL 2600748, *4 (D. N.J. Sept. 10, 2007) (finding no good cause under *Rhines* to grant a stay, in part, based on petitioner's failure to suggest that he is pursuing unexhausted claims in state court in order

to avoid delay); *Leonardos*, 2007 WL 1174825 at * 3 (holding that both the alleged suppression of newly discovered evidence by a prosecutor as an objective factor not under petitioner's control and petitioner's simultaneous pursuit of new unexhausted claims in state court weighed in favor of finding "good cause").

Turning to Petitioner's unexhausted claims, Petitioner has shown "good cause" under *Rhines* under any of the interpretations discussed above.  First, the facts in this case suggest that Petitioner could overcome the showing of "cause" required to defeat a procedural bar.  In this regard, based on the record, it appears that prior to July, 2008, a reasonable investigation would not have provided Petitioner with the information upon which he relies in seeking his Motion to Amend and to Stay. Thus, Petitioner's lack of knowledge of Medina's information regarding Senra and the prosecutor's alleged secret agreement with Medina to withhold that information appear to constitute an objective factor over which Petitioner could not have had control.  Second, where the standard of "cause" required to overcome a procedural bar is met, any lesser standard must also be satisfied.  Third, Petitioner did not discover the new information until July, 2008, after the Third District Court of Appeal had already affirmed the trial court's denial of Petitioner's original post-conviction motion. Fourth, after Petitioner's original post-conviction motion was denied but before Petitioner filed his original *habeas* Petition in this Court, Petitioner appears to have timely filed in state court a second motion for post-conviction relief regarding the claims at issue in the Motion to Amend and to Stay before this Court.  Thus, he has demonstrated efforts to exhaust the new claims.  For all of these reasons, the Court concludes that Petitioner has satisfied the "good cause" requirement in *Rhines*.

Having found that Petitioner has sufficiently demonstrated two of the *Rhines* factors – that is, good cause and lack of dilatory conduct, the Court considers the third *Rhines* factor:  whether Petitioner's unexhausted claims are "potentially meritorious."  In determining whether unexhausted

claims are "potentially meritorious," a court does not weigh or even consider the evidence in the

case.   *See, e.g.,Rankin v. Norris*, 2009 WL 1973475, *4-5 (E.D. Ark. July 8, 2009) (granting stay

under *Rhines* and holding, in part, that petitioner's unexhausted claims are potentially meritorious

because they are "plainly not without merit," with no analysis of the underlying merits of the claim);

*Burton v. Dir., Cal. Dep't of Corr. and Rehab.*, 2009 WL 960099, *3 (S.D. Cal. April 7, 2009)

(granting stay under *Rhines* and finding petitioner's unexhausted claim potentially meritorious, based

on the representations of petitioner regarding his basis for claim); *Greene v. McDaniel*, 2009 WL

311168, *3 (D. Nev. Feb. 9, 2009) (granting stay under *Rhines*, in part, based on finding one claim

potentially meritorious, where court relied on representations of petitioner regarding unexhausted

claim); *Kuzyk v. Edwards*, 2008 WL 4975877, *4 (C.D. Cal. Nov. 20, 2008) (granting stay under

*Rhines*, finding claims potentially meritorious, without any analysis of merits of claims, where

claims "appear colorable"); *Warren v. Hedgpeth*, 2008 WL 4104519, * 1 (N.D. Cal. Sept. 4, 2008)

(granting stay under *Rhines*, in part, where petitioner "provided sufficient facts" to allege

unexhausted claim and finding claim potentially meritorious based on petitioner's representations);

*Green v. Folino*, 2006 WL 2092575, *7 (E.D. Pa. July 26, 2006) (granting stay under *Rhines*, based

in part, on petitioner's representation that his newly discovered claim would show that trial judge

should have recused himself because "a judge's failure to recuse himself can constitute a due process

violation," as potentially meritorious, without an analysis of underlying merits of claim).

Rather, it simply accepts the Petitioner's allegations as true for purposes of the analysis. *See*

*Henry*, 2009 WL 762219 at *4 (regarding one of petitioner's unexhausted claims, the court

determined that "[petitioner] fails to explain how the DNA testing he seeks– even if it ultimately

established he was intoxicated and entitled to mitigating jury instructions– would entitle him to

federal habeas relief"); (regarding another claim, the court determined that "[e]ven if [petitioner's]

allegations were accepted as true, the claim would not create a colorable basis for habeas relief"); *see, e.g.*, *Burton*, 2009 WL 960099 at *2-3 (granting stay and finding, in part, that petitioner's unexhausted claim that prosecutor withheld exculpatory evidence in violation of his Fourteenth Amendment, "if proven true," was potentially meritorious under *Rhines*); *Rhyne v. McDaniel*, 2008 WL 2165955, *4 (D. Nev. May 21, 2008) (where a petitioner's unexhausted claim alleged that "the state failed to disclose material evidence that would have undermined the credibility of a co-defendant who ultimately testified against [petitioner] and that the state knowingly offered false or misleading testimony and evidence," the court found that "if taken as true, arguably presents a meritorious challenge to his conviction or sentence" and satisfies "potentially meritorious" standard of *Rhines*); *Bartelli v. Wynder,* 2005 WL 1155750, *2 (E.D. Pa. May 12, 2005) (granting stay under *Rhines*, finding in part that petitioner's unexhausted claim "potentially meritorious" because the petitioner's "claims allege violations of [his] constitutional rights that could serve as grounds for granting a writ of habeas corpus if supported by sufficient facts").

Then, the court must determine whether, accepting the claims as true for purposes of the analysis, the resulting factual pattern would warrant that the *habeas* petition be granted.  *See Rogers v. McNeil*, 2008 WL 5210922 at *2 (M.D. Fla. Dec. 11, 2008)(denying stay under *Rhines*, in part, where petitioner failed to show that unexhausted claims allege violations of federal constitution, and thus, finding petitioner "does not assert a claim which provides a basis for federal habeas relief."); *Henry*, 2009 WL 762219 at *4 (in denying stay, court determined that one of petitioner's unexhausted claims was not potentially meritorious because "claim did not allege his federal rights were violated") (regarding another unexhausted claim, court found that the claim "would not create a colorable basis for habeas relief"); *Bradley v. LaClair*, 599 F. Supp.2d 395, 406 (W.D.N.Y. 2009) (denying stay under *Rhines* where petitioner failed to show that unexhausted claim was a cognizable

right under federal habeas review, and thus, could not show that claims were "potentially meritorious"); *Rhyne*, 2008 WL 2165955 at * 4 (in granting stay, district court held "factual allegations [for one of petitioner's unexhausted claims] sufficient to raise colorable grounds for relief . . . with at last some chance of habeas relief"); *Bartelli,* 2005 WL 1155750 at *2 (granting stay where unexhausted claim alleged violations of constitutional rights that could serve as basis for habeas relief). If so, the claims are "potentially meritorious," and the third *Rhines* factor is satisfied. *See, e.g., Rankin*, 2009 WL 1973475 at *4-5; *Burton*, 2009 WL 960099 at * 3; *Greene v. McDaniel*, 2009 WL 311168, *3; *Kuzyk*, 2008 WL 4975877 at *4; *Warren*, 2008 WL 4104519 at * 1; *Rhyne*, 2008 WL 2165955 at *4; *Green v. Folino*, 2006 WL 2092575 at *7. Upon the limited review that applies to the merits of a petitioner's claims under *Rhines*, I recommend a finding that Petitioner has demonstrated that his new claims are "potentially meritorious."

Here, Petitioner's unexhausted claims contain allegations that the prosecution violated his Sixth and Fourteenth Amendment rights. Looking first to Petitioner's allegations that he suffered a due process violation under the Fourteenth Amendment, Petitioner asserts that the prosecutor knowingly presented Senra's false testimony and deliberately withheld from the defense information about Senra's reduction in sentencing in exchange for his testimony. A petitioner who succeeds on a claim of prosecutorial misconduct by showing that such conduct infected the trial with fundamental unfairness demonstrates that the resulting conviction effected a denial of due process. *Greer v. Miller,* 483 U.S. 756, 765 (1987) (quoting *Donnelly v. DeChristoforo,* 416 U.S. 637, 643 (1974)); *see also Smith v. McDonough*, 2008 WL 2941149, *12-13 (S.D. Fla. July 29, 2008). The appropriate standard of review for a claim of prosecutorial misconduct on a writ of *habeas corpus* is "the narrow one of due process, and not the broad exercise of supervisory power." *Darden v. Wainwright,* 477 U.S. 168, 181 (1986) ( *quoting Donnelly v. DeChristoforo,* 416 U.S. 637, 642 (1974)). The Supreme

Court has stated that "the touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). As a result, a court must determine whether the prosecutor's actions were so egregious that such misconduct amounted to a denial of constitutional due process. *Id.*

In making this determination, courts must keep in mind that when a state knowingly uses perjured testimony at trial or allows untrue testimony to go uncorrected, a defendant is denied due process. *Giglio v. United States,* 405 U.S. 150, 153 (1972); *Napue v. Illinois,* 360 U.S. 264, 269 (1959). Likewise, when a defendant proves prosecutorial misconduct in the nature of failure to disclose material exculpatory evidence by establishing that (1) evidence was suppressed, (2) the evidence was favorable to the defense, and (3) the evidence was material either to guilt or punishment, he succeeds in showing a due process violation. *Brady v. Maryland,* 373 U.S. 83, 87 (1963); *see also East v. Johnson,* 123 F.3d 235, 237 (5th Cir.1997) (undisclosed evidence is material if there exists a reasonable probability that the result of the proceedings would have been different had the evidence been disclosed to the defense). Where a petitioner demonstrates a due process violation, the *habeas* petition must be granted. *Greer v. Miller*, 483 U.S. 757, 765 (1987) (reversing grant of writ of *habeas corpus* where court of appeals erred in its due process analysis, and setting forth proper analysis for demonstrating the denial of due process in a habeas petition); *Smith v. Philips*. 455 U.S. 209, 219 (1982 ) (same); *see also Sandstrom v. Butterworth*, 738 F. 2d 1200, 1213-15 (11ᵗʰ Cir. 1984), *cert. denied,* 469 U.S. 1109 (1985) (upholding district court's grant of writ of *habeas corpus*, where petitioner denied due process in underlying trial); *Pamplin v. Mason*, 364 F.2d 1, 6 (5ᵗʰ Cir. 1966) (same); *Molaire v. Smith*, 743 F. Supp. 839, 843-44 (S.D. Fla. 1990) (granting *habeas* petitioner due to a violation of petitioner's right to due process).

Therefore, where, as here, a petitioner's unexhausted *habeas* claim could, if taken as true,

constitute a due process violation,[8] the claim is "potentially meritorious" under the *Rhines* standard. *See Henry*, 2009 WL 762219 at * 3- 6 (denying stay, in part, where petitioner failed to show how unexhausted claims violated his federal constitutional rights); *Rogers*, 2008 WL 5210922 at *2 (denying stay under *Rhines*, in part, where petitioner failed to show that unexhausted claims allege violations of federal constitution); *see, e.g.*, *Burton*, 2009 WL. 960099 at *2-3 (granting stay and finding, in part, that petitioner's unexhausted claim that prosecutor withheld exculpatory evidence in violation of his Fourteenth Amendment right, if proven true, was "potentially meritorious" under *Rhines*); *Rhyne*, 2008 WL 2195955 at *4 (where a petitioner's unexhausted claim alleged that "the state failed to disclose material evidence that would have undermined the credibility of a co-defendant who ultimately testified against [petitioner] and that the state knowingly offered false or misleading testimony and evidence," the court found that "if taken as true, arguably presents a meritorious challenge to his conviction or sentence" and satisfies "potentially meritorious" standard of *Rhines*); *see also Green v. Folino*, 2006 WL 2092575 at *7 (granting stay under *Rhines*, based, in part, on the finding that petitioner's newly discovered claim that his trial judge should have recused himself was "potentially meritorious" under *Rhines* because "a judge's failure to recuse himself can constitute a due process violation") (citing to *United States ex rel. Perry v. Cuyler*, 584 F.2d 644, 647 (3d Cir. 1978)).

Next, the Court considers Petitioner's unexhausted claims of prosecutorial conduct as they relate to the Sixth Amendment. According to Petitioner, his newly discovered evidence supports an unexhausted claim showing that the prosecution intentionally placed Senra in Petitioner's jail as a

---

[8]As noted previously, the Court offers no opinion as to the strength of the evidence supporting Petitioner's allegations. Rather, for purposes of the analysis only, it simply assumes the claims to be true.

33

paid informant of the prosecution to elicit incriminating statements from Petitioner and interfered with his right to counsel under the Sixth Amendment.  This type of violation is generally referred to as a *Henry* violation and occurs when the state, through its law enforcement agencies, improperly uses a jailhouse informant to elicit incriminating statements from a defendant in violation of his Sixth Amendment right to counsel, without the defendant's having made a valid waiver of his right to counsel prior to speaking with the informant.  *United States v. Henry*, 447 U.S. 264 (1980) (citing *Massiah v. United States*, 377 U.S. 201 (1964)); *see also Kaufman v. Wilson*, 477 U.S. 436, 459 (1986).  The right enunciated in *Henry* applies only during significant encounters between the prosecution and the accused, and under Florida law applies where the cellmate acts as a government agent and is a paid informant specifically commissioned to obtain incriminating evidence and deceive the petitioner for that purpose.  *See Cooper v. McNeil*, 2008 WL 5252267, * 61-62 (M. D. Fla. Dec. 18, 2008) (citing *Rolling v. State*, 695 So. 2d 278, 291 (Fla. 1997) (other citations omitted)).

Where a petitioner's unexhausted claim alleges violations on constitutional grounds that could serve as grounds for granting a *habeas* petition if supported by sufficient facts, the claim is not plainly meritless and meets the standard of "potentially meritorious" under *Rhines.  See Henry*, 2009 WL 762219 at * 3- 6;  *Rogers*, 2008 WL 5210922 at  *2; *see e.g., Burton*, 2009 WL 960099 at * 3 ("[p]etitioner has alleged facts which, if proven true, establish that his unexhausted claim is potentially meritorious" under *Rhines*); *Bartelli,* 2005 WL 1155750 at *2 (granting stay under *Rhines*, finding in part that petitioner's unexhausted claim was "potentially meritorious"  because the petitioner's "claims allege violations of [his] constitutional rights that could serve as grounds for granting a writ of habeas corpus if supported by sufficient facts"); *see also Webster v. Kearney,* 2006 WL 572711, *5 (D. Del. March 8, 2006) ("[l]iberally construing" the allegations and concluding that

34

they were not clearly non-meritorious).

Pursuant to these standards, Petitioner's unexhausted claim alleging a *Henry* violation is "potentially meritorious" under *Rhines*. If Petitioner provides sufficient facts that demonstrate that Medina's allegation that Senra was placed in Petitioner's jail by the prosecution to elicit incriminating statements from Petitioner in violation of his right to counsel, Petitioner could provide a basis for a constitutional violation and have a colorable federal claim. Petitioner's Sixth Amendment violation claim under his unexhausted claims could serve as grounds for granting a writ of *habeas* corpus if supported by sufficient facts, and thus, cannot be found plainly meritless at this time.

In summary, Petitioner's unexhausted claims meet all of the elements set forth in *Rhines*. As a result, for purposes of determining Petitioner's Motion to Stay, fulfillment of the standards in *Rhines* weighs in favor granting of a stay and abeyance of Petitioner's potentially mixed *habeas* petition.

Additionally, the interests of comity also favor granting Petitioner a stay under *Rhines*. The AEDPA and the exhaustion doctrine dictate that the state courts be given an opportunity to resolve a question of fact or state law, including issues of timeliness and merits, that may have an important bearing for purposes of comity and judicial efficacy before the federal courts make a determination, so that this Court can ultimately can review Petitioner's claims on a fully informed basis. *See Granberry v. Greer*, 481 U.S. 129, 134-35 (1987), *overruled in part by* 28 U.S.C. § 2254(b)(3) (holding that a state no longer may be deemed to have waived the exhaustion requirement). Here, Petitioner is already in the process of pursuing his unexhausted claims in state court, which indicates that the state has already begun to invest its resources in the resolution of the timeliness and merits of his new claim, further weighing in favor of deferring to state courts. *See, e.g., Cobb v.*

35

*McDonough*, 2008 WL 115725,  *1 (N.D. Fla. Jan 9, 2008) (finding stay appropriate under *Rhines* in the interests of comity where petitioner's claim at issue awaited scheduled evidentiary hearing in state court proceeding).

Moreover, Petitioner's efforts to pursue the state appeal process also do not appear to be necessarily futile at this time, in light of the indication that an evidentiary hearing will be scheduled soon.  *See Morrow v. McNeil*, 2009 WL 3135439, *6 (S.D. Fla. Sept. 29, 2009) (applying *Rhines* and denying stay as futile where unexhausted claims clearly procedurally defaulted in state court) (citing *Kelley v. Sec. for Dep't of Corr.*, 377 F.3d 1317, 1351 (11ᵗʰ Cir. 2004) ("[W]hen it is obvious that the unexhausted claims would be procedurally barred in state court due to a state-law procedural default, [the district court] can forego the needless 'judicial ping-pong' and just treat those claims now barred by state law as no basis for federal habeas relief.") (other citations omitted)).  For the foregoing reasons, allowing the state courts to make a full and broad determination of the merits of Petitioner's unexhausted claims on issues affecting their own state laws furthers the objectives of the AEDPA and exhaustion doctrine, and weighs in favor of a stay.

Finally, the Court also considers the protection of Petitioner's *habeas* rights under his original Petition pursuant to the dictates of *Rhines*, and finds that it also supports a stay.  As Petitioner's AEDPA clock expired on January 7, 2009, under the trigger date for his original claims, any dismissal of his *habeas* Petition at this time would deny him the right to relief.  On the other hand, determining the claims that Petitioner raised in his original Petition could bar Petitioner's new claims from being considered if this Court concludes that all of the claims raised by Petitioner in his original Petition lack merit.  Under such a circumstance, the Court would dismiss the original Petition, leaving no Petition to be amended by the new claims, should Petitioner exhaust his new claims and continue to desire *habeas* review of them.  By granting a stay of Petitioner's original

36

Petition so that the timeliness, and possibly the merits, of the unexhausted claims can be decided by the state courts, Petitioner's original claims will remain possibly viable in this Court, regardless of the outcome of the state courts' resolution of the new claims, and provide Petitioner with protection of his *habeas* rights consistent with the objectives set forth in *Rhines*.  544 U.S. at 277.

Thus, in order to (1) safeguard the potential viability of Petitioner's original Petition, (2) provide the state courts with the opportunity to address the timeliness and merits of Petitioner's new claims, and (3) simultaneously preserve Petitioner's ability to pursue federal *habeas* relief on the new claims should he desire to do so, I respectfully recommend that the Court **STAY** Petitioner's Motion to Amend his Petition [D.E. 19, D.E. 24] until such time that the state courts have ruled on Petitioner's second post-conviction motion or Petitioner has withdrawn that motion; **GRANT** Petitioner's Motion to Stay Proceedings [D.E. 19, D.E. 24]; and **STAY** Petitioner Jorge Lorenzo Cueto's Petition Under 28 U.S.C. § 2254 for Writ of *Habeas Corpus* by a Person in State Custody [D.E. 1, 4] until such time that the state courts have ruled on Petitioner's second post-conviction motion or Petitioner has withdrawn that motion.  I further recommend that Petitioner and Respondent file a joint monthly notice on the last business day of each month notifying this Court of the status of the state court proceedings, until further Order by the Court, so this Court can avoid further delay of this matter.

### III. Recommendation

For the foregoing reasons, I **RECOMMEND** the following:

1.      Petitioner's Motion to Amend his Petition [D.E. 19, D.E. 24] be **STAYED** until further order of this Court;

2.      Petitioner's Motion to Stay Proceedings [D.E. 19] be **GRANTED**;

3.      Petitioner's Petition Under 28 U.S.C. § 2254 for Writ of *Habeas Corpus* by a Person

in State Custody [D.E. 1, D.E. 4] be **STAYED** until further order of this Court; and

4.      Petitioner and Respondent shall file a joint monthly notice on the last business day of each month notifying this Court of the status of the state court proceedings, until further Order by the Court.

The parties shall have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable William J. Zloch, United States District Judge. Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the report and shall bar the parties from attacking on appeal the factual findings accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *R.T.C. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *LoConte v. Dugger*, 847 F.2d 745 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404, 410 (5th Cir. Unit B 1982) (*en banc*); 28 U.S.C. § 636(b)(1).

        **FILED AND SUBMITTED** at Fort Lauderdale, Florida, this 12th day of March, 2010.


                                    _____
                                    ROBIN S. ROSENBAUM
                                    United States Magistrate Judge

cc:     Honorable William J. Zloch
        Counsel of Record

        Jorge Lorenzo Cueto,
        Prisoner # 431392
        Martin Correctional Institution
        1150 S.W. Allapattah Road
        Indiantown, Florida 34656
        (via regular mail)